Thank you, Judge. Good morning, and may it please the Court, James Kuhn on behalf of the plaintiff appellant in this case. I would like to reserve five minutes if I can. I guess I'd like to begin with the issue on which the Court requested supplemental briefing, if that makes sense this morning. The Court asked us about the applicability of Luna against Astru, a case in which the claimant was adjudicated disabled on a second application as of, in effect, the day after the date of the ALJ's decision that had denied her first application. In this case, the time period is slightly longer. That is September 1, ALJ denial, October 26, 2009, date of disability. That's an SSI application, and the Court should know that the date of application is the date benefits can begin, so there's no point in finding someone disabled any time before that date. So quite often on SSI applications, date of application becomes date of disability. In any event, it's a rather short time. I think we said seven weeks in our briefing. It's actually eight weeks if you count up the days. We would suggest, as we did in our supplemental briefing, that this is a lot closer to Luna than it is to, for example, Bruton against Massonari, which was a three-year period and a change from age category to age category. There was much new evidence. In this case, there was nothing different. There was nothing. My client did not change age category. There was not new medical evidence in that eight-week period. Isn't there at least one difference? I'm not sure it's a distinction between this case and Luna. In Luna, as I understand it, the claimant tried to present that evidence to the district court. In other words, it said, I have evidence other than the evidence heard by the ALJ, which is the second approval, if you will, or the other approval, as new evidence under 405G. You didn't do that here, I take it. We didn't present to the ALJ. I believe the only thing in the record was the fact of the new application approval. I don't think there was. Right. In the district court, did you attempt to say there's new evidence? No. We got it. We didn't say that to the district court. Okay. It was in the record. The appeals counsel's decision recites the fact of the new application and the new approval. But we did not in the district court say that. And that's one of the government's objections to applying Luna here. I don't think it's a meaningful distinction. The government bases that contention on the idea that we didn't present any new evidence, but the court in Luna specifically said we don't know if there's new evidence. We're sending it back for the reasonable possibility that the subsequent grant of benefits was based on new evidence not considered by the ALJ. Okay. So what relief would we give you if you were right that Luna applies to your case? I think Luna justifies a remand for further proceedings. I don't think it's not worth it. Not for the award of benefits, necessarily. No, I don't think that you would. Because that's the position your brief took, I think, wasn't it? I don't believe so. Our brief takes that position as to the CPP concentration case issue. I don't believe we took that position. I think it's just remand on the Luna issue. The government's objections also include that the – and this is a fairly complex argument, but that the court can remand only under sentence 6 of section 405G, not under section 4. And presumably their argument, although they don't spell it out in their brief, is that, well, yes, that's because you didn't incorporate this evidence in the record. And in my answer to the judge's question just now, it is in the record. We didn't put it in there. But I'm not sure that is what makes the difference. In other words, you're speaking of Dr. Powell's opinion? No, I'm speaking now still of the subsequent approval of the application. Okay. Okay. Yeah, Dr. Powell's opinion is in the same category. That is to say, we didn't argue that in the district court, but we did submit it. It was in the record. It became part of the record because of the appeals counsel record. It's in there. Because we submitted it to the appeals counsel. And that's right. So we get to the preservation issue then. Right. Other than Dr. Powell's opinion, what was in the one record that wasn't in the other? That's it. I think that is it. And, you know, Dr. Powell's a fairly strong opinion. It's not a – it's not something we sent out for. It was a disability determination services referral from the State for an assessment. It's an in-depth assessment, and it goes back. I mean, it says these are things that she's had for a long time. So it's quite relevant to taking this back to the past, including perhaps to her last date insured, which is in 2003, which is fairly distant in this case. The government also says, well, you can't reverse this unless the claimant shows it's not supported by substantial evidence. Interestingly, they cite a 1939 case for that, NLRB against Columbian Enameling, which predates the universal camera case by 12 years. And universal camera, of course, says you've got to look at the whole record, including that which supports the decision and that which fairly detracts from its weight. In this case, again, certainly the subsequent grant of benefits does fairly detract from the weight of the ALJ's decision. Also reminding ourselves that that's an initial application that was approved. By definition, by the time you get to an ALJ decision, you've already lost at the initial application date. It's hard to get it approved the first time. That someone does is fairly strong evidence that, in fact, that person is disabled and was perhaps for a time before that. Again, under Luna, we believe it should be sent back so that at least you can see whether, in the words of the court, it's reconcilable or inconsistent. I would like to talk about the concentration, persistence, or pace issue. The ALJ here found that the claimant has moderate difficulties in maintaining concentration, persistence, and pace. And I do note and. The ALJ used and, not or. Sometimes there's a finding that says or, but in this case it was and, so it's all of them. That's the government, of course, says, well, that's covered because the ALJ said simple, routine, repetitive work to the vocational expert limited the claimant to that. And that covers concentration, persistence, or pace. We certainly don't believe those are the same thing. Words, as Justice Scalia has famously said, words mean things. And when you talk about concentration, persistence, and pace, that's different than something satisfied by a restriction to simple, repetitive work. Why isn't simple, repetitive work more conservative than impairment in concentration, persistence, and pace? I know words mean something. Simple, repetitive work is a threshold determination. It's does this person understand a process? We're making widgets enough to put together this widget in a three-step process without being led through the process. That's not the same as concentration, persistence, or pace, which asks, can this person make 100 of those widgets in an hour? So your position is that somebody who can do simple, routine, repetitive work may still not, may still be disabled and unable to work because they don't have bad impairment in concentration, persistence, and pace? Because they can't do this thing. They can't stay focused. They can't do it enough times in a two-hour thing. Why doesn't the word repetitive pick that up? I think repetitive means something that doesn't vary, something that's the same every time. It's somewhat redundant of routine and simple. Repetitive, to say that the work is repetitive doesn't necessarily mean you can't keep doing it for a long time. You may need to. And, in fact, when something is simple and routine, those kinds of jobs, speed is important, especially in those jobs. In the kinds of jobs that we do, speed is, well, sometimes there's pressure, but it's not like you've got to turn out 100 things in an hour. The simpler a job gets, the more important it is to be able to stay on it and keep doing that thing over and over and over. It doesn't, especially when you've got concentration, persistence, and pace as a restriction, it's not the same as simple, repetitive work. I know that Brink is a non-reported case that we rely on, but as a matter of fact-matching, certainly, that's distinguishable from the Stubbs-Danielson case, on which the government relies, in which you've got a doctor who says this person is limited concentration, persistence, or pace and can do simple, repetitive work. If you have an expert who says that that's true, then simple, repetitive work will cover it both, because that doctor said a person with this concentration, persistence, or pace limitation can do simple, repetitive work. We don't have that in this case. This is not in the record. The ALJ made that finding, and so the ALJ has to account for that finding somehow in the vocational expert hypothetical. Simple, repetitive work doesn't do it. The government has one other point they make, and that is this finding as to concentration, persistence, or pace is only for the purpose of Step 3. That's the step at which we decide whether somebody needs the Appendix 1 listings of impairments. And it doesn't apply in 5. Again, they cite the unpublished Israel case, which doesn't say that. All it says is the Step 3 finding is not itself an RFC, is not itself a description of a limitation.   So the government has to account for the limitations, but you've got to take it and everything else into account. So Israel doesn't stand for that, and it's — it does not seem to me on reading the ALJ's decision that you can have an ALJ saying this person has this limitation and then disregard it later in the opinion. Do you want to save the balance of your time? I would. Thank you very much, Your Honor. We'll hear from the government. Thank you. Good morning, Your Honors. Gerald Hill for the Commissioner. I'd like to talk about three frequently litigated issues in this case, although I think the Court can find that two of them are waived. First, I'd like to start with Dr. Powell's opinion, because I know if I don't, I may not get to it. Before I begin, the Commissioner is willing to concede an argument that we made on pages 38 and 39 of the brief that the Court should not consider Dr. Powell's report because of an absence of good cause shown. And that argument begins with the first full paragraph on page 38 and ends on line 4. And the Commissioner, with the Court's indulgence, is willing to concede that argument. So what does that mean? That means that the whole record for the Court's consideration includes Dr. Powell's report. So the Court reviews the ALJ's decision for substantial evidence based on a record that includes Dr. Powell's report, consistent with the rule of law set out in the Bruce case. So we're not taking Bruce on directly. We've decided to try to live with the Bruce case. I would still be arguing that Dr. Powell's opinion does not change the result in this case and does not provide a basis for remand. If we do that, then doesn't the Luna question loom larger? Another ALJ saw Dr. Powell's report, right? I actually don't know. Well, we know there was another proceeding. Yes, there's a subsequent favorable decision, yes. I guess it's not an ALJ, according to my opinion, it's not an ALJ decision. I don't know actually anything about it. Somewhere in the agency, somebody approved another disability application. We don't know whether Dr. Powell's report was part of that application? Yes. Was it? I don't know. Okay. But given that we're now going to consider things that weren't in front of the ALJ, why wouldn't the better thing to do to send the entire thing back to the ALJ, let him consider the second, thus the other application in its successful conclusion, and review this on a complete record? It may be the better thing to do. I'm not really able to say as a policy matter. Congress has decided that there can be a remand for taking new evidence only under the sentence six conditions. Could we, given your concession, could we remand for the ALJ to consider Dr. Powell's report? I think that's generally not the kind of review that the Bruce case contemplates. We're not really under sentence six with Dr. Powell's report. That's part of the administrative record that this court reviews under sentence four. And then the question for the court is, despite the new evidence, does the ALJ's decision remain supported? I understand we have the power. I understand we have the power to do all that. I guess my question is, does this confluence of circumstances, the Luna case, the other successful application, and now the commissioner's concession that Dr. Powell's report should be considered, do all of those together argue for sending this entire ball of wax back to the ALJ so that somebody more expert than we can decide this in the first instance? It may or may not be a good idea considering, and that depends on what is in the record of the subsequent favorable decision, which we can't know. And Congress has kind of separated those grounds. And so that materiality and good cause showing has to be made at the district court to consider the new evidence that's not in the file. And generally under Bruce, except perhaps in exceptional circumstances, the court should probably be affirming or reversing, determining whether any reasonable ALJ, any reasonable fact finder, could reach the conclusions that the ALJ reached based on the whole record. That would be consistent with substantial evidence review. And so there may be cases where evidence first submitted to the appeals council might require a remand because maybe an RFC, it turns out, the ALJ would be compelled to find a different RFC, and then we need more vocational expert testimony on that RFC and the effect of it. So that might be the type of case that should be remanded for further proceedings under Bruce. But generally, the inquiry will be sort of like, I guess, a review of a jury verdict. Could the evidence on the updated record sustain the verdict or the ALJ's conclusions? Because there's no reason-giving requirement by the appeals council. Let me just ask one more thing on this point. Let me tell you the source of my discomfort. One of the reasons we give some deference to the ALJ and the agency is they're expert in these matters of disability. Now we have a report that hasn't been considered. You say it doesn't make any difference, and you may well be right, but we're not experts on this issue. We're experts on the law of disability, if you will. And so that's the source of my discomfort here, is the report isn't frivolous on its face. It isn't a report that says, I examined a woman other than this one, or I found nothing wrong with her. And so we've got to decide whether or not that report would have made a difference to an expert who never saw it. And I think the inquiry, you've kind of touched on whether it would make a difference. On Monday, we talked about the harmless error inquiry. I think this inquiry is a little bit different. It's a little bit more straightforward. It's a straightforward application of the substantial evidence standard. And this is sort of the district courts are struggling with applying the bruise case. I can tell you that some of them are remanding because they find evidence material and relevant and contradicting other evidence in the file, and that's kind of the situation you're describing here with Dr. Powell's report. An example of, I think, the right way that the courts should do these bruised appeals council evidence cases is given by the Boyd case. It's a recent unpublished case by this circuit, 2013 Westlaw 1800556. In that case, the evidence that was submitted to the appeals council was a psychological evaluation where the doctor said that the claimant met the or, I'm sorry, equaled the criteria of section 1204 of the listings of per se disabling impairments. So the court recognized that this was a decision that would establish disability, but nevertheless found that the ALJ had substantial evidence in the form of other medical opinions that contradicted the new evidence. Well, I guess that's the point I would like to explore at this point. My colleague has suggested one approach that we might take, which is to remand, let an expert ALJ consider Dr. Powell's opinion. On the other hand, we, of course, did have Dr. Powell's opinion. The government did comment on the fact that his conclusion conflicted with the other test that he, Dr. Powell, performed, and that he relied almost entirely on Wilder's self-reporting. And, of course, the ALJ did not find her to be credible. So along the lines of what you were just saying there, if we choose to do so, even taking Dr. Powell's opinion into consideration, which the ALJ, of course, did not, are we at liberty to discount whatever he may say for those two reasons that I just mentioned? Yes. I mean, you are. And I think that you're not performing a de novo determination of the issues. You're just determining, your task would be to determine whether the ALJ had that evidence, if she would have been compelled to find the claimant disabled. But I gather from your answer to Judge Hurwitz that perhaps in this case, since you had the new proceeding as well, that maybe the better approach would be to remand and let the ALJ just take a look at the whole issue once again. If there's a basis to do that, I can't say whether that's the better approach, because in some subsequent favorable determinations, some will be material and some won't be material. And without the rationale and evidence presented to the district court, we don't know. Someone may go blind. Someone can have an injury. We have some markers here that maybe that could help. It kind of gets along to the point that when there's no vision, the people perish. And part of the problem for us is that we may not have the vision necessary, not being experts to filter through all of the minutia that are involved in these kinds of cases. They're very, very important to the people who are making the claims, and the procedures and the issues are well known to the doctors and others involved. But from our perspective, we have to rely very much on the substantial evidence rule and pick our way through as best we can. So I gather your point is, while you're not going to concede it, that perhaps Judge Hurwitz might have the better solution here. The reason I don't concede it is because I don't think there's a mechanism that permits doing it. Could we send it to the district court? Well, if you look at the Melkonian case, I'm sure, the Supreme Court case, that was an appeal of, I guess, improvidently entered final judgment, under sentence six, and the court said, well, there should have been no judgment. And so they vacated the, I think it was the Ninth Circuit decision, and sent it back to the district court to comply with the sentence six procedures. And under those procedures, the district court retains jurisdiction. There's no final appealable judgment. And then the secretary, well, now the commissioner returns to the district court with the updated decision and findings and supporting materials. So that's the procedure that has to be followed for ordering the ALJ to consider new evidence. So is that what we would do here? If we took the approach that you and Judge Hurwitz discussed, would the procedure be for us to remand to the district court and then have the parties go from there on whether it goes back to the ALJ as well? You know, I don't think it can be done in this case. I mean, the court can do what it does. But there's no good... We found that. Yeah. But we'd like to follow that. Yeah. We don't take too many, file too many petitions. But there is an issue of good cause lurking out there with respect to any evidence and also actually the subsequent favorable decision itself. We have in our administrative record the fact of the decision. We don't have the decision itself. We don't have the evidence that supports it and its rationale. And so in order for Sentence 6 requirements to be satisfied, there has to be a good cause for the failure to include those in the record in the prior proceeding. That showing is ordinarily made to the district court. It wasn't made in this case. I don't know the precise limits of this court's authority when the issue is not raised in the district court and the record is not fully developed for appellate review. So what I'm hearing you say is you're not quite sure what we would do if we wanted to remand it. But your position is that we should, with respect, for example, to Dr. Powell, just indicate that his findings were contrary to the rest of the record and the medical evidence that he himself provided and that he relied on the complainant who the ALJ found to be not credible, and therefore we should discount Dr. Powell's views. Is that correct? That's correct, yes. Because they don't provide a basis to overturn based on substantial evidence standard. And then the other frequently litigated issue that is not waived but is kind of crying out for attention and guidance to the district courts is this issue of moderate limitation in concentration, persistence, and pace and whether the ALJ accounted for that in limiting the claimant to simple, routine, repetitive work. And here on page SER 16, the ALJ expressly found, made an express finding that her RFC assessment included her Step 2 and Step 3 limitations. This court in the Stubbs-Danielson case permits doctors to make these translations on the agency's forms. Doctors were adjudicators at the initial reconsideration stages, and the claimant now wants a different rule that an ALJ who has to consider more evidence than the doctors can't also make this same translation. The agency policy recognizes that a limitation to simple tasks may be easier for someone who has a limitation in this area than, say, complex tasks or unusual tasks, and that can be found in the listings at section 12 sub c sub 3. So also this proposed rule was rejected, or a request for this rule was rejected in the Israel case, and the reasoning, I think, is inconsistent with the rationale, if not the letter, of the Stubbs-Danielson cases, the Hoopi case, the Bray case, and the Valentine case. And it's all in the brief at pages 24 to 32. I will rest on the brief about Ms. Patriarca's opinions and testimony on the harmless error issues, and if the court doesn't have any further questions, the commissioner asks that this court affirm the judgment of the district court affirming the ALJ's decision. Thank you. Thank you. Counsel, you have some rebuttal time. Thank you, Your Honor. Taking the last bit first, doctors are medical experts. ALJs are not. So doctors certainly can translate concentration, persistence, or pace into simple, routine, repetitive, and ALJ can't do that. That's a medical and vocational decision, because what the ALJ is doing is mediating between the doctor who says what the impairments are and the vocational expert who says what a person with those impairments can do. Now, as to Dr. Powell, aren't you making an argument against your position? Because if we have Dr. Powell's opinion, it's there, and we, like all the other doctors' views that we look at, we determine what problems there may be with them, not medically, but insofar as the consistency. It sounds like you're saying we have all we need to decide we don't need to send this back. On the Powell issue. I know there are other points. Right. On the Powell issue. I was attempting to address the concentration, persistence, or pace issue that counsel just referred to.  But so I'll go then to Dr. Powell, et cetera. Dr. Powell does, in fact, say that he doesn't say she meets the listings, but he finds her markedly impaired with respect to two of three different criteria, which would lead to that finding. Does the record in this case tell us what was before the agency in the successful application? It does not. Same thing in Luna. The Court didn't know anything other than the second application was granted. So address what we can do under the law. Okay. Can we take, and I use the term loosely, can we take this whole ball of wax and move it back to the ALJ? Thank you for calling it a ball of wax. It could be described otherwise. So that she could consider both Dr. Powell's testimony or report and the prior agency proceeding? Yes. Because the subsequent grant. Subsequent agency proceeding. Dealing with a prior disability. Just to clarify from an earlier question, that is not an ALJ decision. That's a first-level decision. Right. You apply, you get decided, reconsideration, then ALJ. This was at the very first. Yeah. No, but I'm asking whether the ALJ in this case could consider the prior agency record and Dr. Powell's report. Is there a mechanism that we can send it back to the ALJ to do that? I think so, yes. I mean, I think sentence 6 allows you to do that. I don't think you have to tell the district court to stop it there. If you'll forgive me. Sentence 6 says that you can send it back for evidence to be taken before the commissioner on a showing that there's new evidence material and good cause for failure to incorporate the evidence in the record. The thing is, there is new evidence. It is in the record. It didn't get there until the appeals council. So it was before the commissioner. So we believe that meets sentence 6 and gives you the procedural device by which you can, in fact, send it back to the commissioner. I guess I was wondering out loud whether or not the commissioner's concession that we should consider Dr. Powell's report puts that report in that category also. I think both Dr. Powell's report and the subsequent agency decision are part of that, that the ALJ should be considering on remand. That's a big ball of wax. It is. Ball of wax, can of worms. That's a technical term. That's right. Mr. Hill said that section 6 is not applicable. Mr. Hill, would you discuss why you think it is? Right. Because it says that the court may at any time order additional evidence to be taken before the commissioner under the conditions described. What are the conditions that apply there? The conditions are new evidence material and there's good cause for failure to incorporate the evidence in the record. The fact is, it's new evidence that's material. It wasn't failed to, it wasn't failed to, excuse me, it was, in fact, incorporated in the record, but not until the appeals counsel level. I think if you look at that through the lens of Bruce, that tells you that sentence 6 can be used to send this back to the commissioner, to the ALJ. If the Court has nothing further. Very good. Thank you both for your argument. The case just argued is submitted.
judges: Alarcon, Smith, Hurwitz